UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-42-HRW

DIVERSICARE LEASING CORP., *et al.*,                              PLAINTIFFS,

v.                    **MEMORANDUM OPINION AND ORDER**

ROSE HUTCHINSON,
as Administratrix of the Estate of
JOHN HUTCHINSON,                                                  DEFENDANT.

This matter is before the Court upon Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant [Docket No. 8]. The matter has been fully briefed by the parties [Docket Nos. 8-1, 12 and 13]. For the reasons set forth herein, the Court will sustain the motion.

I.

This case arises from John Hutchinson's residency at South Shore Nursing & Rehabilitation Center, a nursing facility owned and operated by Plaintiffs. As part of the admissions process, on April 30, 2015, John Hutchinson executed admissions documents in connection with his admission to South Shore Nursing & Rehabilitation Center ("South Shore").Mr. Hutchinson signed numerous documents related to his admission to South Shore, including: Informed Consent to Decline Medical Treatment and/or Services; Resident Influenza Vaccine Release and Informed Consent; Request to Decline Cardiopulmary Resuscitation, and; Acknowledgment of Documents Signed and Reviewed. These documents are attached to Plaintiff's Motion as Exhibit A.

The Admission Agreement contains an Arbitration Agreement, also executed by Mr. Hutchinson. The contract requires any claims arising out of the Admission Agreement or related to Mr. Hutchinson's medical care at South Shore are to be resolved exclusively through binding arbitration. It provides, "that any legal dispute, controversy, demand, or claim that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident's stay at the Facility shall be resolved exclusively by binding Arbitration and not by a lawsuit or resort to other court process." [Docket No. 8-3].

The Agreement expressly includes the following: any claim for payment, non-payment, or refund for services rendered to the Residency by the Facility, claims arising out of State or Federal law, claims based upon breach of contract, breach of fiduciary duty, violation of rights, fraud, or misrepresentation, common law or statutory negligence, gross negligence,malpractice, abuse, neglect or any other claim based on any departure from accepted standards of medical or nursing care, whether such claims be for statutory, compensatory, or punitive damages, and whether arising in the future or presently existing. *Id.*

The signing parties acknowledged that they were "agreeing to mutual arbitration, regardless of which of us may make a claim, and that we will mutually benefit from the resolution of disputes through arbitration." *Id.*

The Arbitration Agreement also states that Mr. Hutchinson had the right to consult with an attorney prior to signing the agreement. *Id.* It further states that Mr. Hutchinson could rescind the Agreement by providing written notice to the facility within 30 days. *Id.* According to the Complaint, Mr. Hutchinson did not provide such notice after he signed the Agreement.

Mr. Hutchinson's daughter, Rose, filed an action in the Jefferson Circuit Court seeking money damages for alleged injuries to her father arising out of his residency at South Shore Nursing & Rehabilitation Center ("the State Court Action").

Plaintiffs allege that Defendant has refused to arbitrate his claims. Therefore, they brought this petition under § 4 of the Federal Arbitration Act.

Plaintiffs now move this Court to compel arbitration and enjoin the proceedings in the State Court Action.

## II.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "manifests a liberal federal policy favoring arbitration agreements." *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 626 (6th Cir.2004) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (internal quotation marks omitted).

Under the FAA, when contracts contain arbitration clauses, federal courts "are to examine the language of the contract in light of the strong federal policy in favor of arbitration," and are required to resolve any ambiguities in the agreement or doubts as to the parties' intentions in favor of arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000); *see also AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (explaining that when a "contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be in favor of coverage.") (internal citations and quotation marks omitted).

3

Before compelling an unwilling party to settle a dispute by arbitration, the Court must apply a two-part test "to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties, and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Sixth Circuit has recognized hat even when applying state-law principles of contract interpretation, " 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.' " *Bratt Enterprises, Inc.*, 338 F.3d at 613 (*quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). The court then "shall order arbitration upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Rent–A–Center*, 130 S.Ct. at 2776 (quoting 9 U.S.C. § 4).

Finally, in evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment." *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 864 (N.D.Ohio 2013). Therefore, the party opposing arbitration bears the burden of "showing a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002).

### III.

In seeking to avoid the agreement, Defendant contends it is not enforceable. She argues that her father lacked the capacity to enter in the agreement. She alludes to a prior diagnosis of dementia and states that he could not read the fine print.

4

Capacity is analyzed under state law. *See Rowan*, 647 F. App'x at 609. Under Kentucky law, a signed contract "will not be lightly set aside in the absence of clear and convincing evidence." *Lausman v. Brown*, 168 S.W.2d 579, 585 (Ky. 1943). A transaction with a person not adjudicated mentally unsound will not be voided "unless the condition be so obvious that any and all ordinarily prudent minded persons would observe the defect." *Everett v. Downing*, 182 S.W.2d 232, 236 (Ky. 1944). There is a presumption of contractual capacity. *Rose v. Rose*, 182 S.W.2d 977, 978 (1944). "[O]ld age does not constitute in itself incapacity to enter into a valid contract or execute a deed…" *Id.* "There must be some direct proof sufficient to convince the minds of the court that at the time the transactions were entered into that he did not and could not understand his acts." *Revlett v. Revlett*, 118 S.W.2d 150, 155 (Ky. 1938).

Federal courts in Kentucky have further articulated Kentucky's competency standard in connection with the signing of an arbitration agreement upon admission to a long-term care facility. In *Abell v. Bardstown Med. Investors, Ltd.*, a case from the Western District of Kentucky involving a claim that a patient suffering from a "major mental disorder" lacked the capacity to enter into an arbitration agreement, the court, in its order enforcing the arbitration agreement, noted:

> As to the issue of mental competency, "courts will look only to the adequacy of the understanding where the validity of an act is questioned, and neither age, sickness, extreme distress, or debility of the body will affect the capacity to make a contract
>
> or conveyance, if sufficient intelligence remains to understand the transaction." *Hall v. Crouch*, 341 S.W.2d 591, 594 (Ky.1961). Because the law understands that individuals suffering from conditions such as psychosis have **lucid periods in which they can conduct themselves and their business normally,**

5

> **"unsoundness of mind to avoid a contract must relate to the immediate time when the contract was made."** *Id.* A person has the requisite mental capacity if they have "the ability to understand and appreciate the consequences of the particular transaction." *Conners v. Elbe,* 269 S.W.2d 716, 718 (Ky.1954). As such, the evidence must be such that it sufficiently proves that Plaintiff could not, and did not, understand that she was signing an arbitration agreement.

*Abell v. Bardstown Med. Investors, Ltd.*, 2011 WL 2471210 at *3 (W.D. Ky. June 20, 2011) (emphasis added).

Given these periods of lucidity, evidence off "unsoundness of mind to avoid a contract must relate to the immediate time when the contract was made." *Hall v. Crouch*, 341 S.W.2d 591, 594 (Ky. 1960) (quoting *Jefferson Standard Life Ins. Co. v. Cheek's Adm'r*, 80 S.W.2d 518, 521 (1935)). ) *See also, Abell v. Bardstown Med. Inv'rs, Ltd.*, at *3–4.

This is certainly true in Mr. Hutchinson's case. Stephanie Kramer, an employee at South Shore Nursing & Rehabilitation Center, assisted Mr. Hutchinson with the admissions process on April 30, 2-0145 and personally witnessed Mr. Hutchinson sign the Arbitration Agreement. [Affidavit of Stephanie Kramer, Docket No. 13-1 at ¶ 2-3]. Ms. Kamer read the Arbitration Agreement to Mr. Hutchinson in its entirety and asked if he had any questions about it. *Id.* at ¶ 6. Mr. Hutchinson responded that he did not. *Id.* Throughout the admissions process, Mr. Hutchinson responded appropriately to Ms. Kamer's questions and told her that he understood what she was telling him on several occasions. *Id.* at ¶ 7.

Mr. Hutchinson's medical records also support a conclusion that he was competent to enter into the Arbitration Agreement upon his admission to South Shore. An evaluation dated

6

April 30, 2015, the day he signed the Arbitration Agreement, states he was alert and oriented to person, place, and time. [Docket No. 8-2, pg. 1]. He was not confused or lethargic and he had no notable memory problems. *Id.*

Mr. Hutchinson's admission Minimum Data Set (MDS) Assessment, which was completed on May 9, 2015 and pertained to the prior seven days, including the day of his admission to South Shore, notes that he had clear speech, was capable of expressing ideas and wants, and had clear comprehension of verbal content. *Id.* at 2.

Mr. Hutchinson also signed other legal documents before and after his execution of the Arbitration Agreement, including an informed consent to decline treatment and Power of Attorney documents on April 7, 2015 and August 19, 2015. (*Id.* at 3; 12-19.) Notably, the August 19, 2015 Power of Attorney grants Rose Hutchinson, as the designated attorney-in-fact, the power to arbitrate Mr. Hutchinson's claims. (*Id.* at 13.) The Sixth Circuit has noted that the signing of a power of attorney in the month before a resident moved into a long-term care facility "counsels against finding incapacity [to sign an arbitration agreement]." *Rowan v. Brookdale Senior Living Cmtys., Inc.*, 647 F. App'x 607, 610 (6th Cir. 2016) (holding that individual whose treating physician documented had "limited insight/judgement as a result of either mild vascular dementia or delirium" was competent to execute arbitration agreement).

Nothing in the screening indicates that, at the time Shelton signed the arbitration agreement, he was unable to understand it. There is no opinion – professional or otherwise – to that effect in the record. Accordingly, the Court cannot find that the Defendant has met her burden of establishing by clear and convincing evidence that Shelton lacked the mental capacity

to enter into the agreement at the time of execution.

Nor can Defendant avoid the Arbitration Agreement on the grounds that Mr. Hutchinson had trouble reading fine print. There is evidence in the records to suggest that Mr. Hutchinson was capable of reading the regular print of the Arbitration Agreement. In a weekly nursing assessment performed on May 5, 2015, and consistently throughout the residency period, it was documented that Mr. Hutchinson's vision was "adequate – sees fine detail, including regular print in newspapers/books." [Docket No. 8-2]. Likewise, in connection with his admission MDS Assessment completed on May 9, 2015, Mr. Hutchinson's visual function was assessed and he reported to staff of South Shore that he "just cannot see far away." *Id.*

Defendant attempts to argue that her wrongful death claim is not subject to arbitration. This Court rejected an identical argument in *Golden Gate National Senior Care v. Addington*, 2015 WL 1526135 (Ky. 2015), holding that requirement that all wrongful death beneficiaries sign the arbitration agreement violated the FAA. "Because it is impossible to identify all possible wrongful death claimants at the time an arbitration agreement is signed and the resident is alive, the Ping holding would effectively nullify arbitration in the wrongful death context, which is precluded by the FAA." *Id.* at *8.

Having found that Defendant must submit her claims to arbitration, the question remains whether this Court should enjoin her from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding in Jefferson Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize

federal courts to stay proceedings pending in state courts." *Great Earth Companies, Inv. v. Simmons*, 288 F.3d 878, 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." Id. Pursuant to the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth,* 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling him to submit to arbitration, it is necessary to enjoin Defendant from pursing his claims in any alternative forum, including state court. Otherwise, she would be permitted to circumvent her arbitration agreement and in doing so, circumvent this Court's judgment that she be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with her pending state-court action.

### IV.

A valid and binding arbitration agreement was executed. This matter must be referred to arbitration.

Accordingly, **IT IS HEREBY ORDERED**:

(1)  Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 8] be **SUSTAINED**;

9

(2) Defendant shall prosecute all of her claims arising out of John Hutchinson's residency at South Shore Nursing & Rehabilitation Center in accordance with the terms of the arbitration agreement ; and

(3) that this matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award.

This 7th day of February, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge